IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARNELLA R. WILSON,

Plaintiff,

v.

AMERICAN GENERAL FINANCE INC,
and A. BRUCE CASTEEL

Defendants.

CIVIL ACTION NO.   10-412

CONTI, District Judge

MEMORANDUM OPINION AND ORDER

Pending before the court are two motions:  1) defendants' second motion for judgment on the pleadings (the "Motion for Judgment on the Pleadings" (ECF No. 40)), filed by American General Financial Services Inc. ("AGF"), and Bruce Casteel ("Casteel" and together with AGF, "defendants"), pursuant to Federal Rule of Civil Procedure 12(c); and 2) plaintiff's motion to strike (the "Motion to Strike" (ECF No. 44)), filed by Darnella R. Wilson ("plaintiff" or "Wilson").

In the Motion for Judgment on the Pleadings, defendants request the court to dismiss the claims against them set forth in the first amended complaint.  ("Amended Complaint" (ECF No. 35).)  The Amended Complaint contains two claims: 1) defamation as libel per se[1] - count I; and

---

[1] Libel is defined as: "**1**. A defamatory statement expressed in a fixed medium, esp. writing but also a picture, sign, or electronic broadcast. . . . Also termed *defamatory* **libel. 2.** The act of making such a statement; publication of defamatory matter by written or printed words, by its embodiment in physical form or by any other form of communication that has the potentially harmful qualities characteristic of written or printed words**.**" Black's Law Dictionary 999 (9th ed. 2009).  Libel per se is defined as "**libel** that is actionable in itself, requiring no proof of special damages." Id.

2) intentional infliction of emotional distress ("IIED") - count II.  The parties do not dispute that Pennsylvania law governs plaintiff's claims.  Pursuant to 28 U.S.C. § 1367, this court has diversity jurisdiction over these state law claims.

In the Motion to Strike, plaintiff moves the court to strike defendants' affirmative defenses of failure to state a claim and conditional privilege as insufficient under Federal Rule of Civil Procedure 12(f), and to strike defendants' remaining affirmative defenses as immaterial to the Amended Complaint.

For the reasons set forth below, the court will grant in part and deny in part defendants' Motion for Judgment on the Pleadings; and deny plaintiff's Motion to Strike in its entirety.

## I.     Allegations in the Amended Complaint

Plaintiff alleges that she is the sole proprietor of her current business and facility where she employs an accountant, architect, engineer, and a certified business development consultant. (Am. Compl. ¶ 9 (ECF No. 35).)  In February 1999, plaintiff refinanced her home.  Her original mortgage provided in relevant part that "a late charge of 5% of the monthly note will accrue if payment is received after the 15th day of each month."  (Id. ¶ 10.)  The payment coupons reflected the total payment to be $397.39, with a "late charge of $19.88 if payment is received after the 15th".  (Id.; see Ex. 9 (ECF No. 35-1).)  No other late fees or service fees were specified in the mortgage, which also provided that any amount paid in excess of the $397.39 would be credited toward paying down the principal balance.  (Am. Compl. ¶ 10 (ECF No. 35).)

By letter dated May 26, 1999, AGF informed plaintiff that it purchased her mortgage on or about March 1, 1999, and that there would be no changes in the terms of her original mortgage.  (Id., Ex. 2 (ECF No. 35-1).)  In June 2009, plaintiff mailed her monthly payment for that month on or about the 30th of the month – incurring a late fee penalty – and including an

additional $130.00 to be credited toward reducing the principal balance. Plaintiff alleges that before she put her payment in the mail she was harassed and berated by an AGF agent. (Id. ¶ 12.) Before July 15, 2009, plaintiff sent a $500 payment and made all payments timely thereafter. (Id.)

Plaintiff alleges that AGF willfully and knowingly fabricated an account delinquency and published false and defaming assertions to third parties in a deliberate attempt to defame her. (Id. ¶ 14.) Plaintiff asserts that she first learned about defendants' publication on or about September 1, 2009, when she downloaded her file from the website of the Better Business Bureau ("BBB"). The BBB file contained the statements:

> As of the beginning of June, [2009] Ms. Wilson's account has been delinquent for several month [sic]...
>
> Ms. Wilson continues to be in default of the repayment terms of her account…
>
> As of the date of this letter [July 29, 2009] her account is past due for April, May, June, and July payments.

(Id., Ex. 3 (ECF No. 35-1).) Plaintiff avers that the statements are false and were made by AGF's employee, Casteel. Plaintiff alleges that on or about November 13, 2099, she learned about defendants' additional false statements published to her attorney, Carol L. Rosen, Esquire, by an AGF employee, Jeffrey L. Ledbetter, which were:

> Our transaction records indicate that Ms Wilson's account became four months past due in April 2009.
>
> No payments were made on the account August 2008, January 2009, and March 2009, which caused her account to become progressively more delinquent…
>
> On June 30, 2009, the AGCDC district manager spoke with Wilson and agreed to a payment arrangement to assist her in repaying the past due balance….

> If Ms. Wilson wants AGCDC to consider a loan
> modification, she can contact the branch, but since Ms.
> Wilson is represented by counsel, as per policy, the
> branch would have to receive your written consent. . . .

(Id. ¶ 15; Ex. 4 (ECF No. 35-1).)

Plaintiff avers that two months prior to November 13, 2009 (before the above letter was sent) she presented defendants with cancelled checks proving her payment for all the months in question. (Id. ¶ 21 (ECF No. 35).) Additionally, plaintiff avers that her bank statements confirm proof of payment to defendant for each and every month since February 1999. Plaintiff avers that she had no conversation with defendant about any form of mortgage modification and consistently refused their repeated efforts to induce her to borrow more money. (Id. ¶ 26.)

With respect to her IIED claim, plaintiff alleges that defendant intentionally misstated her indebtedness by proceeding with collection activities based upon false delinquencies. (Id. ¶ 27.) Plaintiff alleges that AGF harassed her by, among other ways: 1) barraging her with annoying phone calls beginning on June 17, 2009; 2) sending a male agent to her home on June, 27, 2009 who left his calling card in her mailbox – which caused her to fear for the safety of herself and her granddaughter; 3) sending plaintiff two identical inaccurate letters concerning her account; 4) engaging in a concerted effort to cause Wilson severe emotional distress, anxiety, and humiliation based upon a fictitious delinquency, including sending her an apparent notice of foreclosure generated by the consumer reporting agency, Experian Inc.; 5) impliedly throwing egg on her mailbox the morning after plaintiff was informed that the United States Post Office sent a warning to AGF concerning defendant's alleged improper and illegal use of her residential mailbox; and 6) impliedly smashing an egg on her vehicle. (Id. ¶¶ 27-37.)

Plaintiff argues that a person of ordinary sensibility would suffer extreme emotional distress, anxiety and humiliation if they were subject to defendant's aggression and assault. (Id. ¶ 39.)

## II. Procedural Background

On March 26, 2010, plaintiff filed the original complaint. The court permitted plaintiff leave of court to file an amended complaint, which she filed on January 5, 2011. On January 25, 2011, defendant filed an answer containing fourteen affirmative defenses, including conditional privilege of common interest with respect to the libel per se claim. On May 18, 2011, defendants filed the Motion for Judgment on the Pleadings (ECF No. 40) and a brief in support. (Defs.' Br. (ECF No. 41).) On June 3, 2011, plaintiff filed a response (Pl.'s Resp. (ECF No. 44)) and a brief in support (Pl.'s Br. (ECF No. 45).) In her response, plaintiff requests the court to deny the Motion for Judgment on the Pleadings and moves the court to strike defendants' affirmative defenses of failure to state a claim and conditional privilege as insufficient under Federal Rule of Civil Procedure 12(f).

On June 15, 2011, the court held a hearing on the Motion for Judgment on the Pleadings. As set forth more fully on the record, the court held that the Motion for Judgment on the Pleadings would be granted in part and denied in part. The court denied the Motion for Judgment on the Pleadings with respect to the claim for libel per se (count I). The court granted the Motion for Judgment on the Pleadings with prejudice against Casteel and without prejudice against AGF with respect to the claim for IIED (count II). This Memorandum Opinion sets forth the court's rationale for those rulings along with its rationale for denying the Motion to Strike.

III.    **Standard of Review**

**Federal Rule of Civil Procedure 12(c)**

The court must decide, as a matter of law, whether plaintiff's claims against defendants

can be dismissed by a motion for judgment on the pleadings.  DiCarlo v. St. Mary Hosp., 530

F.3d 255, 262 (3d Cir. 2008).  The court must accept as true all well-pled allegations of fact in

the pleadings and draw every reasonable inference in favor of the party against whom judgment

is sought.  Id. at 262-63 (3d Cir. 2008). When a motion for judgment on the pleadings alleges

plaintiff's failure to state a claim upon which relief can be granted, the appropriate standard for

deciding such a motion is the same as the standard used to decide a motion pursuant to Rule

12(b)(6)).[2]  Bangura v. City of Philadelphia, 338 F. App'x 261, 264 (3d Cir. 2009); Turbe v.

_____

[2] A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the
complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not
opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss,
the court accepts as true all well-pled factual allegations in the complaint and views them in the light most favorable
to the plaintiff.  U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not
need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to
dismiss, a complaint must provide more than labels and conclusions.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
553-55 (2007).  A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v.
Allain, 478 U.S. 265, 286 (1986)).  Factual allegations must be enough to raise a right to relief above the speculative
level and must be sufficient to state a claim for relief that is plausible on its face. Id.

>       A claim has facial plausibility when the plaintiff pleads factual content
>       that allows the court to draw the reasonable inference that the defendant
>       is liable for the misconduct alleged.  [Twombly] at 556, 127 S. Ct.
>       1955.  The plausibility standard is not akin to a "probability
>       requirement" but it asks for more than a sheer possibility that a
>       defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts
>       that are "merely consistent with" a defendant's liability, it "stops short
>       of the line between possibility and plausibility of 'entitlement to
>       relief.'"  Id., at 557, 127 S. Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

>       Two working principles underlie Twombly. Id. at 1949-50. First, the tenet that a court must accept a
complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by
mere conclusory statements. Id.  Second, determining whether a complaint states a plausible claim is context-
specific, requiring the reviewing court to draw on its experience and common sense.  Id.  "[W]here the well-pleaded
facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it
has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 1950 (citing FED. R. CIV. P. 8(a)(2)).

>       A court considering a motion to dismiss may begin by identifying pleadings that because they are mere
conclusions are not entitled to the assumption of truth.

>       While legal conclusions can provide a framework of the complaint,
>       they must be supported by factual allegations. When there are well-

6

<u>Gov't of Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991); <u>Rose v. Bartle</u>, 871 F.2d 331, 342 (3d Cir. 1989). As a general rule, in ruling on a motion for judgment on the pleadings a district court may not consider matters extraneous to the pleadings; as an exception, however, a court may consider documents integral to or explicitly relied upon in the complaint without converting the motion into one for summary judgment. <u>Mele v. Fed. Reserve Bank of N.Y.</u>, 359 F.3d 251, 256 n.5 (3d Cir. 2004).[3]

"[A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings . . . . The motion . . . only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 206-08 (3d ed. 2004). Courts disfavor motions for judgment on the pleadings and apply a very restrictive standard when ruling on such motions. <u>Id.</u> § 1368 at 222-23.

## IV. Defendants' Motion for Judgment on the Pleadings

### A. Count I – Libel Per Se

For purposes of the Motion, defendants do not dispute plaintiff's version of the facts set forth in the Amended Complaint. Defendants argue that the Motion should be granted because all their statements were made under a conditional privilege, pursuant to 42 Pa. Cons. Stat. §

---

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>

[3] Here, the standard is the same as the standard for a Rule12(b)(6) motion because the court need not consider any matters extraneous to the pleadings, and defendants allege that "Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted" and requests this court to "dismiss each and every count in Plaintiff's Amended Complaint with prejudice as to all defendants." (Mot. for J. on Pleadings 1(ECF No. 40).)

8343(7).  Defendants contend that whether plaintiff set forth sufficient facts to meet each of the

first six elements necessary to establish a cause of action for libel or libel per se under

Pennsylvania law is without consequence, because defendants made the allegedly defamatory

statements under the occasion of a conditional privilege.  Defendants set forth this defense as an

affirmative defense[4] in their answer to the Amended Complaint.  (Answer and Affirmative

Defenses of All Defs. to Pl.'s Am. Compl. (ECF No. 36).)

 In support, defendants rely upon Rankin v. Phillippe, 211 A.2d 56, 58 (Pa. Super. Ct.

1965) (holding that a conditional privilege exists whenever "circumstances are such as to lead

any one of several persons having a common interest in a particular subject matter correctly or

reasonably to believe that facts exist which another sharing such common interest is entitled to

know") (quoting RESTATEMENT, TORTS § 596).  Defendants point to the court of appeals'

instruction in Rankin that whether a publication is privileged is a matter of law for the court to

determine.  (Id. (citing RESTATEMENT, TORTS § 603 cmt. a).)

Defendants also point to the decision in Beckman v. Dunn, 419 A.2d 583 (Pa. Super. Ct.

1980), in which the Pennsylvania Superior Court opined that a conditional privilege arises in any

one of three situations:  "(1) some interest of the person who publishes defamatory matter is

involved; (2) some interest of the person to whom the matter is published or some other third

party is involved; or (3) a recognized interest of the public is involved."  Beckman, 419 A.2d at

588.  Defendants maintain that the two alleged statements made by AGF's employees were each

made for a proper purpose and under circumstances where each rightfully believed that the

person to whom his statements were made had a common interest in the particular subject matter

---

[4] It is problematic for the court to rule on a motion for judgment on the pleadings predicated upon an affirmative defense because plaintiff did not respond to any new allegations presented giving rise to the defense.

and were entitled to receive the statements. Defendants further argue that the BBB and Rosen solicited the statements from AGF at plaintiff's request.

Plaintiff argues that defendants have not proffered any facts which show a legally cognizable common interest between the BBB and defendants. Plaintiff maintains that the facts in <u>Beckman</u> are distinguishable from the facts in the instant case. Plaintiff contends that unlike <u>Beckman</u>, here there is no adversarial mutuality between defendants and the BBB, and the BBB is not a party in this case. Plaintiff notes that the dispute in <u>Beckman</u> took place in an academic setting where the alleged defamatory statements consisted of opinion derived from facts pertaining to the plaintiff's academic performance. Plaintiff argues that defendants ignore the distinction that the statements in issue here consisted of false facts, as opposed to an opinion based upon facts which was the circumstance in <u>Beckman</u>.

### 1. <u>Discussion</u>

In <u>Tucker v. Fischbein</u>, 237 F.3d 275 (3d Cir. 2001), the Court of Appeals for the Third Circuit recognized:

> Under Pennsylvania law, a defamation plaintiff bears the burden to show:
>
> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.

<u>Tucker</u>, 237 F.3d at 281 (citing 42 PA. CONS. STAT. § 8343(a) (1998)). The court of appeals instructed that, "[u]nder Pennsylvania law, the court must decide at the outset whether a statement is capable of defamatory meaning. <u>Id.</u> (citing <u>Thomas Merton Ctr. v. Rockwell Int'l Corp.</u>, 442 A.2d 213, 215-16 (Pa. 1981).)

"In Pennsylvania, a defamatory statement is one that 'tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"  Resnick v. Manfredy, 52 F. Supp.2d 462, 470 (E.D. Pa.1999) (quoting U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir. 1990)). Pennsylvania has enacted statutory provisions governing actions for defamation.  The applicable burdens of proof are codified at 42 Pa. Cons. Stat. § 8343, which provides:

> **§ 8343. Burden of proof**
>
> **(a) Burden of plaintiff.--**In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.
>
> **(b) Burden of defendant.--**In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
> (1) The truth of the defamatory communication.
> (2) The privileged character of the occasion on which it was published.
> (3) The character of the subject matter of defamatory comment as of public concern.

42 Pa. Cons. Stat. § 8343(a), (b).

Here, the alleged defamatory publication implicated the personal credit status of plaintiff, who is a sole proprietor of a business.  A written defamation is considered libel.  See Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008) ("A 'libel' is any malicious publication that is written, printed, or painted, or procured to be written, printed, or painted, and which tends to expose a person to contempt, ridicule, hatred, or degradation of character.")  A

publication imputing unworthiness of credit is libelous.  Altoona Clay Prods., Inc. v. Dun &

Bradstreet, Inc., 367 F.2d 625, 630-31 (3d Cir. 1966).

Plaintiff alleges that defendants' statements were libelous per se.  Words recognized as

injurious on their face are actionable per se.  Joseph v. Scranton Times L.P., 959 A.2d 322, 344

n.23 (Pa. Super. Ct. 2008).  In discussing the plaintiff's burden to prove damages in the context

of libel, the Pennsylvania Superior Court in Joseph instructed:

> With words that are actionable *per se,* only general damages, *i.e.,*
> proof that one's reputation was actually affected by defamation or
> that one suffered personal humiliation, or both, must be proven;
> special damages, *i.e.,* out-of-pocket expenses borne by the plaintiff
> due to the defamation, need not be proven. *Brinich v. Jencka,* 757
> A.2d 388, 397 (Pa. Super. 2000). A plaintiff in a defamation action
> need not prove special damages or harm in order to recover; he
> may recover for any injury done to his reputation and for any other
> injury of which the libel is the legal cause. *Agriss,* 483 A.2d at 474.
> Pennsylvania has adopted the rule of Restatement (Second) of
> Torts, § 569 (1977), that all libels are actionable without proof of
> special harm. *Curran v. Philadelphia Newspapers, Inc.,* 376 Pa.
> Super. 508, 546 A.2d 639, 641 n. 3 (1988).

Joseph, 959 A.2d at 344.

In this case, accepting as true plaintiff's allegations, the alleged defamatory statement are

libelous per se and the crux of the parties dispute, therefore, centers on two discrete issues: 1)

whether defendants are entitled to a  privileged status with respect to the relevant alleged

defamatory statements published about plaintiff, and 2) if so, whether defendants abused that

privilege.

### a.      Conditional Privilege

"'A conditional privilege arises when a recognized interest of the public is involved.'"

Thompson v. Wagner, 631 F.Supp. 2d 664, 686 (W.D. Pa. 2008) (quoting Am. Future Sys. v.

Better Business Bureau of E. Pa., 872 A.2d 1202, 1210 (Pa. Super. Ct. 2005).

"'Communications . . . made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause are privileged.'" Id. (quoting Moore v. Cobb-Nettleton, 889 A.2d 1262, 1268 (Pa. Super. Ct. 2005) (citing Miketic v. Baron, 675 A.2d 324, 329 (Pa. Super. Ct. 1996); RESTATEMENT (SECOND) OF TORTS § 595 (Protection of Interest of Recipient or a Third Person)).

If a defendant carries its burden to show that a communication is conditionally privileged, the burden shifts to the plaintiff to establish that the defendant abused its conditional privilege. Miketic, 675 A.2d at 329. In Beckman v. Dunn, 419 A.2d 583 (Pa. Super. Ct. 1980), the Pennsylvania Superior Court instructed:

> Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, . . . , is made for a purpose other than that for which the privilege is given, . . . , or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, . . . , or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

Beckman, 419 A.2d at 588 (internal citations and footnote omitted)(citing RESTATEMENT (SECOND) TORTS §599 (1976); see Altoona Clay Prods., Inc. v. Dun & Bradstreet, Inc., 367 F.2d at 631-32 (3d Cir. 1966) (finding that although credit publications are privileged as a matter of law in Pennsylvania, "[w]ant of reasonable care and diligence to ascertain the truth, before giving currency to an untrue communication, will destroy the privilege."). Defendants rely upon a conditional privilege based upon a common interest.

b.    Common Interest: Arising from Occasion

Here there is no disagreement that plaintiff asked BBB to do an investigation and that the alleged defamatory statement came in response to that request. At this stage of the litigation, however, the court does not have sufficient information to rule on whether a common interest

exists sufficient to establish the privileged nature of defendant's statements. Typically, however, a common interest arises in the context of a close relationship, such as between members of a family, a work or business relationship, owners of common property, or common members of an organization. See RESTATEMENT (SECOND) OF TORTS § 596 (Common Interest) cmt. c (related to one's right to learn from an associate about matters in which one has an interest in common, such as a partner's right to be told about the details of the discharge of an employee by another partner); cmt. d (related to common property, business and professional interests); and cmt. e (related to members of religious, fraternal and charitable associations). Thus, the case law may not support a common interest under the instant circumstances. Plaintiff correctly points out that the decisions relied upon by defendant involve distinct circumstances in which the parties have a common interest based upon a close relationship. See Rankin, 211 A.2d 56 (involving an action for libel by a church elder against his church commission); Beckman, 419 A.2d 583 (involving an action for libel and slander brought by a student against his university and professor). Here, there is no allegation that BBB and defendants have such a close relationship. The court cannot determine at this stage of the litigation whether a conditional privilege based upon a common interest exists. There are, however, certain other aspects of the conditional privilege to a defamation claim arising from an occasion that may be relevant to the circumstances of this case.

The elements of conditional privilege arising from an occasion are set forth in the RESTATEMENT (SECOND) OF TORTS § 593, which provides:

> **One who publishes defamatory matter concerning another is not liable for the publication if**
>
> **(a) the matter is published upon an occasion that makes it conditionally privileged and**
> **(b) the occasion is not abused.**

RESTATEMENT (SECOND) OF TORTS § 593.[5]

Other sections of the RESTATEMENT (SECOND) OF TORTS, related to the protection of the

interests of the publisher, a recipient, or a third person, may also be implicated.  The elements of

the protection of the publisher's interest are set forth in RESTATEMENT (SECOND) OF TORTS §

594, which provides:

> **An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that**
>
> **(a) there is information that affects a sufficiently important interest of the publisher, and**
> **(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.**

RESTATEMENT (SECOND) OF TORTS § 594.  This kind of conditional privilege may be

implicated in the instant case.  In addition, the interests of a recipient or a third person

may be implicated under the circumstances.

The elements of a protection of interest of a recipient or a third person is set forth

in section 595, which provides:

> **(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that**
> **(a) there is information that affects a sufficiently important interest of the recipient or a third person, and**
> **(b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.**
>
> **(2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that**
> **(a) the publication is made in response to a request rather than volunteered by the publisher or**

---

[5] See comment a to § 593 ("The rules describing occasions that give rise to a conditional privilege are stated in §§ 594 to 598A. The rules governing the exercise of a conditional privilege arising from the occasion are stated in §§ 599 to 605A.").

**(b) a family or other relationship exists between the parties.**

RESTATEMENT (SECOND) OF TORTS § 595.  This kind of conditional privilege may also be implicated here because the information provided by defendants was furnished pursuant to a request.

Even if a conditional privilege applies, it is clear, pursuant to section 595 <u>supra</u>, that such privilege cannot be abused.  A publisher abuses the conditional privilege based upon an occasion if the publisher knows or should know that the published information is not true.  These elements are set forth in RESTATEMENT (SECOND) OF TORTS § 600, which provides:

> **Except as stated in § 602, one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he**
>
> **(a) knows the matter to be false, or**
>
> **(b) acts in reckless disregard as to its truth or falsity.**

RESTATEMENT (SECOND) OF TORTS § 600.

The court must view all factual allegations in the light most favorable to the plaintiff. Here plaintiff averred that she sent information to defendants showing that the payments in issue had been made.  Any letter sent by defendants in contradiction thereof, viewed in the light most favorable to plaintiff, arguably supports plaintiff's allegation that defendants knew the information published concerning plaintiff's credit history to be false, or at a minimum, published that information in reckless disregard of the truth or falsity.

Even if a conditional privilege may exist in this case, the allegations set forth by plaintiff with respect to the statements made to the BBB are sufficient to support an abuse of the privilege.  Therefore, judgment on the pleadings is not appropriate.[6]

---

[6] At the hearing on the Motion, plaintiff did not address her claim for libel based upon statements allegedly published to her counsel.

**B.  IIED – Count II**

As an initial matter, defendants argue that plaintiff's IIED claim against Casteel should be dismissed because plaintiff did not set forth any facts under count II against Casteel.  With respect to AGF, defendants argue that plaintiff's allegations concerning the conduct of AGF's other employees are not sufficiently extreme or outrageous to support a claim for IIED.  Defendants note that it is unclear whether a cause of action for IIED exists under Pennsylvania law, citing <u>Reardon v. Allegheny College</u>, 926 A.2d 477, 488 (Pa. Super. Ct. 2007), <u>appeal denied</u>, 947 A.2d 738 (Pa. 2008).

Plaintiff argues that the tort of IIED is a viable cause of action under Pennsylvania common law and contends that she stated a claim for IIED and need not prove any element at this stage of the litigation.  In support, plaintiff relies upon the decision in <u>Taylor v. Albert Einstein Medical Center</u>, 754 A.2d 650 (Pa. 2000).  At the hearing on the Motion, counsel for plaintiff contended that defendants' actions were so outrageous and terrifying that they severely interrupted plaintiff's work, caused her to lose hair and sleep, impeded her speedy recovery from surgery, caused her to purchase a firearm, bar her windows, install an electronic alarm system and exhibit signs of paranoia and depression.  These allegations, however, were not alleged in the Amended Complaint.

1.  **Discussion**

To date, the Pennsylvania Supreme Court has not expressly recognized a cause of action for IIED.  <u>Taylor</u>, 754 A.2d at 652.  The court has, however, cited RESTATEMENT (SECOND) OF TORTS § 46 "as setting forth the minimum elements necessary to sustain . . . [an IIED] action." <u>Id.</u> (citing <u>Kazatsky v. King David Memorial Park, Inc.</u>, 527 A.2d 988, 991 (Pa. 1987), and <u>Hoy v. Angelone</u>, 720 A.2d 745, 754 (Pa. 1998) (indicating that if the court were to recognize a cause

of action for IIED "'[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society'") (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Even if the Pennsylvania Supreme Court should someday recognize a cause of action for IIED, "[t]he availability of recovery under section 46 is highly circumscribed." Kazatsky, 527 A.2d at 991.

Other courts in Pennsylvania, however, have recognized the tort of IIED and relied upon the RESTATEMENT (SECOND) OF TORTS §46. See Reardon v. Allegheny College, 926 A.2d 477, 488 (Pa. Super. Ct. 2007) (concluding that the appropriate legal standard to be applied in reviewing an IIED claim is whether the complaint sufficiently pleads outrageous conduct causing severe emotional distress corresponding with the provisions set forth in the RESTATEMENT (SECOND) OF TORTS § 46(1)); see also Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (finding that "'it is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery.'" (quoting Reimer v. Tien, 514 A.2d 566, 569 (Pa. Super. Ct. 1986)). In Strickland, the court of appeals stated:

> "Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"

Strickland, 700 A.2d at 987 (quoting Small v. Juniata College, 682 A.2d 350, 355 (Pa. Super. Ct. 1996) (quoting Jones v. Nissenbaum, Rudolph and Seidner, 368 A.2d 770, 773 (Pa. Super. Ct. (1976))).

Restatement (Second) of Torts §46 provides:

> **(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.**
>
> **(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress**
>> **(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or**
>> **(b) to any other person who is present at the time, if such distress results in bodily harm.**

Restatement (Second) Torts § 46.

In <u>Reedy v. Evanson</u>, 615 F.3d 197 (3d Cir. 2010), the Court of Appeals for the Third Circuit, among other matters, considered a state law claim for IIED. The trial court had granted summary judgment, finding that there was no conduct arising to the level of extreme and outrageous. The court of appeals stated:

> While the Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress, *see Taylor v. Albert Einstein Med. Ctr.,* 562 Pa. 176, 754 A.2d 650, 652 (2000), the Pennsylvania Superior Court has recognized the cause of action and has held that, "in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." *Swisher v. Pitz,* 868 A.2d 1228, 1230 (Pa.Super.Ct.2005) (discussing how the Pennsylvania Supreme Court has indicated that, were it to recognize a cause of action for intentional infliction of emotional distress, these would be the requirements necessary for a plaintiff to prevail on such a claim). In addition, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Id.* Liability on an intentional infliction of emotional distress claim "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Field v. Phila. Elec. Co.,* 388 Pa. Super. 400, 565 A.2d 1170, 1184 (1989).

<u>Reedy</u>, 615 F.3d at 231-32.

It is clear that Pennsylvania courts may permit an IIED claim to proceed in appropriate circumstances. To state a plausible claim plaintiff, however, must first allege facts that are so outrageous in character and extreme in degree to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. A resulting physical harm must also be alleged. <u>See</u> <u>Fewell v. Besner</u>, 664 A.2d 577, 582 (Pa. Super. Ct. 1995) ("A plaintiff must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress.") (citing <u>Kazatsky</u>, 527 A.2d at 995); <u>see</u> <u>also</u> <u>Swisher v. Pitz</u>, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) ("'In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'") (quoting <u>Reeves v. Middletown Athletic Ass'n</u>, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)).

At a minimum, this claim would not survive a motion to dismiss because plaintiff does not allege a resulting physical harm. Although plaintiff may request leave to amend to assert such harm, a plaintiff in Pennsylvania must have medical evidence to support such a claim. <u>See</u> <u>Kazatsky</u>, 527 A.2d at 995. Even if plaintiff could rightfully allege such harm, the facts alleged to be outrageous do not strike the court to go beyond all bounds of decency tolerated by a civilized society.

The alleged defamatory statement was made in response to an investigation that was initiated by plaintiff – not defendants. Thereafter, defendants responded to another inquiry by plaintiff's counsel, in which defendants asserted that plaintiff's accounts were past due as a result of untimely or delinquent payments. Such statements – if untrue – could be libelous per se because plaintiff's credit worthiness is implicated. Standing alone, however, that conduct does

not rise to the level of being shocking and so outrageous that it exceeds the levels of decency tolerated by a civilized society.

Next, plaintiff alleged that an agent left an envelope in her mailbox which contained his business card. Although this behavior may be offensive and undesirable, it too is not sufficiently outrageous to go beyond the bounds of decency. Defendants also made several phone calls to plaintiff with respect to her delinquent account on one day. On the last call, plaintiff indicated that she intended to make the payment. Again, although this type of conduct could be found to go beyond annoyance, it does not strike the court as outrageous. It was not repeated on other days, and as far as the court can tell, did not involve threats of death or criminal action.

Thereafter, defendants mailed another letter to plaintiff indicating that her account remained delinquent and offering assistance if plaintiff was experiencing financial problems. The tone of such letters may be annoying – particularly if plaintiff had already paid the delinquent amount – but did not rise to the level of being so outrageous to sustain an actionable IIED tort. The second letter to that effect does not reach the threshold level of exceeding the bounds of common decency. The third mailing containing a statement of credit denial termination or change notice that referenced a foreclosure is certainly offensive, but is not - in and of itself or in the cumulative effect - outrageous. The letter came in the mail, not face-to-face, and did not contain any direct threat. Finally, the incidents of eggs being thrown on plaintiff's mailbox and smashed on her vehicle are – without more – too speculative for the court to infer a direct link to AGF or any agent of AGF.

Examples given in the RESTATEMENT (SECOND) OF TORTS which illustrate actionable behavior are found at number 7 under comment e:

> 7. A, as creditor, seeking to collect a debt from B, sends B a series of letters in lurid envelopes bearing a picture of a lighting about to strike, in

> which A repeatedly threatens suit without bringing it, reviles B as a
> deadbeat, a dishonest man, and a criminal, and threatens to garnish his
> wages, to bother his employer so much that B will be discharged, and to
> "tie B up tight as a drum" if he does not pay. . . .

RESTATEMENT (SECOND) OF TORTS § 46 cmt. e(7).  Such conduct was sufficient under the

illustrations to be considered outrageous.  Comment eight provides an illustration of conduct that

is not so extreme or outrageous as to make A liable to B:

> 8. A, as a creditor, seeking to collect a debt, calls on B and
> demands payment in a rude and insolent manner.  When B says
> that he cannot pay, A calls B a deadbeat, and says that he will
> never trust B again. . . .

Id. § 46 cmt. e(8).  Based upon the repeated number of incidents alone, the alleged conduct here

appears to be more grave than the conduct illustrated in comment number eight.  The conduct

alleged here, however, is closer in nature to the offensive conduct illustrated in number eight as

opposed to the outrageous conduct illustrated in number seven.  There were no threats that

plaintiff would lose her job or her home, or that defendants would tell others that they would take

away plaintiff's livelihood by destroying her business.

Even considering all the alleged conduct together, the court cannot conclude plaintiff

stated a plausible IIED claim.  In so finding, the court does not condone such alleged offensive

conduct; rather, the court finds that the allegations do not rise to the level of the requisite

outrageous conduct to support a claim for IIED.  Under the circumstances, the court will grant

the Motion for Judgment on the Pleadings with respect to the Pennsylvania state law claim for

IIED.  Because the parties agree that plaintiff did not allege that Casteel's actions rose to the

threshold level of IIED, the court will grant with prejudice the Motion for Judgment on the

Pleadings against Casteel.  The court will grant without prejudice the Motion for Judgment on

the Pleadings with respect to plaintiff's IIED claim against AFG.

## V. Plaintiff's Motion to Strike

### A. Standard

The court may grant a motion to strike pursuant to Federal Rule of Procedure

12(f) ("Rule 12(f)") which provides:

> **Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing**
>
> . . .
>
> **(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> **(1)** on its own; or
>
> **(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f).

Rule 12(f) Motions to strike are not favored.  5C CHARLES ALAN WRIGHT AND ARTHUR

R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382.

> [F]ederal judges have made it clear, in numerous opinions they have rendered in may substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.

Id.  (footnotes and citations omitted.)

### B. Discussion

In her response to the Motion, plaintiff moved the court to strike defendants' affirmative

defenses of failure to state a claim and conditional privilege as insufficient under Federal Rule of

Civil Procedure 12(f), and to strike defendants' remaining defenses as unresponsive and immaterial to the Amended Complaint. At this stage of the litigation, however, the court cannot find defendants' affirmative defenses of failure to state a claim and conditional privilege to be wholly insufficient. Likewise, the court cannot determine that defendant's other affirmative defenses – not specified by plaintiff – are redundant, impertinent or scandalous. Therefore, plaintiff's Motion to Strike is without merit and will be denied.

### ORDER

**AND NOW,** on this 8th day of August, 2011, upon consideration of the second motion for judgment on the pleadings (ECF No. 40), filed by defendants American General Financial Services, Inc. and Bruce Casteel, defendants' brief in support (ECF No. 41), the response and motion to strike defendants' affirmative defenses (ECF No. 44), filed by plaintiff Darnell Wilson, and her brief in support (ECF No. 45), **IT IS ORDERED** that defendants' motion for judgment on the pleadings is **GRANTED in part and DENIED in part**. The motion for judgment on the pleadings is GRANTED with prejudice with respect to Count II for intentional infliction of emotional distress ("IIED") against Casteel and GRANTED without prejudice with respect to Count II for IIED against American General Financial Services, Inc. The motion for judgment on the pleadings is DENIED with respect to Count I for libel per se against American General Financial Services, Inc. and against Bruce Casteel.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Strike (ECF No. 44) is denied with prejudice.

By the court,

/s/JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge