IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARNELLA R. WILSON,

               Plaintiff,

     v.

AMERICAN GENERAL FINANCE INC.,
and A. BRUCE CASTEEL

               Defendants.

CIVIL ACTION NO.   10-412

## MEMORANDUM OPINION

CONTI, District Judge

## I.   *Introduction*

There are two motions pending before the court. The first is a motion for summary judgment filed by defendants American General Finance Inc. ("AGF") and A. Bruce Casteel ("Casteel" or collectively with AGF, "defendants") with respect to the claims filed against them by plaintiff Darnella R. Wilson ("plaintiff"). (ECF No. 77.) The second motion pending before the court is plaintiff's motion for leave to file a second amended complaint. (ECF No. 75.)

On March 26, 2010, plaintiff filed the original complaint in this case. (ECF No. 1.) The court permitted plaintiff leave of court to file an amended complaint, which she filed on January 5, 2011, alleging claims of libel per se and intentional infliction of emotional distress ("IIED") against defendants. (ECF No. 35.) On January 25, 2011, defendants filed an answer to the first amended complaint. (ECF No. 36.) On May 18, 2011, defendants filed a motion for judgment on the pleadings and a brief in support thereof. (ECF Nos. 40, 41.) On June 3, 2011, plaintiff filed a response in opposition to defendants' motion for judgment on the pleadings and brief in support

thereof. (ECF Nos. 44, 45.) On June 15, 2011, the court granted in part and denied in part defendants' motion for judgment on the pleadings. The court granted the motion and dismissed plaintiff's claim for IIED and denied the motion with respect to the claim for libel per se. <u>See Wilson v. Am. Gen. Fin. Inc.</u>, 807 F.Supp.2d 291 (W.D. Pa. 2011).

On December 23, 2011, plaintiff filed a first motion for leave to file a second amended complaint, seeking to add an additional claim of libel per se and a claim of fraud to the first amended complaint. (ECF No. 67.) On January 12, 2012, defendants filed a brief in opposition to plaintiff's first motion for leave to file a second amended complaint. (ECF No. 69.) On February 8, 2012, plaintiff filed a reply brief to defendants' brief in opposition. (ECF No. 72.) At a hearing held on February 22, 2012, the court denied plaintiff's first motion for leave to file a second amended complaint without prejudice and set dates for the filing of defendants' motion for summary judgment and plaintiff's response thereto.

On March 2, 2012, plaintiff filed a second motion for leave to file a second amended complaint and a brief in support of her motion seeking "to restate the original claims of Libel Per Se with greater particularity and amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading." (ECF Nos. 75, 76.) On March 16, 2012, defendants filed a response and brief in opposition to plaintiff's second motion for leave to file a second amended complaint. (ECF No. 76.)

On April 23, 2012, defendants filed a motion for summary judgment and a brief in support of their motion. (ECF Nos. 77, 78.) Defendants filed a concise statement of material facts on the same day. (ECF No. 79.) On May 23, 2012, plaintiff filed a response in opposition to defendants' motion for summary judgment and a response to defendants' concise statement of material facts. (ECF Nos. 79, 80.) On June 6, 2012, defendants filed a reply to plaintiff's

response to defendants' concise statement of material facts and a reply brief. (ECF Nos. 83, 84.) On June 15, 2012, a joint concise statement of material facts was filed. (ECF No. 86.)

In defendants' motion for summary judgment, they argue that they are entitled to summary judgment because (1) the alleged defamatory communications forming the basis of plaintiff's libel per se claim were true or substantially true; (2) the alleged defamatory communications were conditionally privileged and defendants did not abuse that conditional privilege; and (3) plaintiff did not suffer any special or actual damages. (ECF No. 78 at 5, 9, 13.) Plaintiff argues (1) there is a genuine dispute of material fact with respect to whether AGF'S statements were true; and (2) the evidence of record supports an award of damages in this case. (ECF No. 81 at 7, 14.)

After an extensive consideration of the parties' submissions and the applicable legal principles, the court concludes that in light of the summary judgment standard of review and based upon the evidence of record, there is no genuine dispute of material fact with respect to whether AGF's alleged libelous statements were true or substantially true or whether defendants' statements were conditionally privileged. Based upon the evidence of record, a reasonable jury could only find that defendants' alleged defamatory statements were true or substantially true and that the communications of the allegedly defamatory statements were conditionally privileged. The motion for summary judgment filed by defendants against plaintiff will be GRANTED.

For the reasons set forth below, plaintiff's motion for leave to file a second amended complaint will be DENIED without prejudice.

II.     *Defendants' Motion for Summary Judgment*

###### A. Factual Background

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Plaintiff is the owner of Wilson's II, an expansion of Wilson's Barbecue, a barbeque restaurant located in Pittsburgh, Pennsylvania. (Joint Concise Statement of Material Facts ("J.C.S.F.") (ECF No. 86) ¶¶ 26-29; Pl. Dep. (ECF No. 79-3) at 9-10.) Until 1999, plaintiff had a mortgage loan with ContiMortgage. (Pl. Ex. 2 pt. 2 (ECF No. 35-1) at 2.) In 1999, defendant AGF purchased plaintiff's account with ContiMortgage and notified plaintiff about the purchase by letter dated May 26, 1999. (Id.) Plaintiff's mortgage payment was due to AGF on the second day of each month in the amount of $397.59 and a late fee of $19.98 would apply if the payment was received after the fifteenth day of the month. (Def. Ex. 9 (ECF No. 79-1) at 17; Pl. Dep. (ECF No. 79-3) at 16-18.) AGF's policy with respect to late or delinquent payments was: "If a debtor is late or delinquent on mortgage payments, AGF policy is to apply any subsequent payments first to the late or delinquent month's payments." (Def. Ex. 5 (ECF No. 79-8) ¶ 14.) By way of example, if a debtor misses a payment in May, but sends a payment in June, AGF will apply the June payment to satisfy the delinquent May payment. (Def. Ex. 5 (ECF No. 79-8) ¶ 15.) Consequently, "although a payment was received in June, the debtor [would still be] due for the June payment because the payment received in June actually paid the amount due for May." (Id.). In this way, the debtor's payments each month will continue to be applied to the prior month's mortgage payment until the debtor becomes current on the mortgage. (Id.)

On July 13, 2009, plaintiff filed a consumer complaint with the Better Business Bureau

("BBB") claiming she was mistreated by AGF with respect to how it was servicing her loan. (Pl.

Ex. 4 (ECF No. 80-6) at 17-20; Pl. Dep. (ECF No. 79-3) at 19.) BBB described its Code of

Business Practices ("BBB's Code") as follows:

> The BBB Code of Business Practices represents sound advertising, selling and
> customer service practices that enhance customer trust and confidence in
> business. The Code is built on the BBB Standards for Trust, eight principles that
> summarize important elements of creating and maintaining trust in business.
>
> This Code also represents standards for business accreditation by BBB.
> Businesses based in the United States and Canada that meet these standards and
> complete application procedures will be accredited by BBB.

(Def. Ex. 5 (ECF no. 79-8) 3-5.) The "eight principals that summarize important elements of

creating and maintaining trust in business" are: (1) build trust; (2) advertise honestly; (3) tell the

truth; (4) be transparent; (5) honor promises; (6) be responsive; (7) safeguard privacy; and (8)

embody integrity. (Id.) The sixth principle in BBB's Code is:

**6. Be Responsive**

**Address marketplace disputes quickly, professionally, and in good faith.**

An accredited business or organization agrees to:
  A. Promptly respond to all complaints forwarded by BBB by:
    1. Resolving the complaint directly with the complainant and
       notifying BBB, or
    2. Providing BBB with a response that BBB determines:
       is professional, addresses all of the issues raised by the
       complainant, includes appropriate evidence and documents
       supporting the business' position, and explains why any relief
       sought by the complainant cannot or should not be granted.
  B. Make a good faith effort to resolve disputes, which includes mediation if
     requested by BBB. Other dispute resolution options, including arbitration,
     may be recommended by BBB when other efforts to resolve dispute have
     failed. BBB may consider a business' willingness to participate in
     recommended dispute resolution options in determining compliance with
     these standards.
  C. Comply with any settlements, agreements or decisions reached as an
     outcome of a BBB dispute resolution process.

> D. Cooperate with BBB in efforts to eliminate the underlying cause of patterns of customer complaints that are identified by BBB.

(Def. Ex. 5 (ECF No. 79-8) 3-5.)

At the time plaintiff filed the consumer complaint, AGF was an accredited member of the BBB, meaning it agreed to abide by BBB's Code and was required to respond to all consumer complaints as instructed in the sixth principle. (Casteel Aff. (ECF No. 79-8) ¶ 5); (Def. Ex. 5 (ECF No. 79-8) 3-5.) At some point before July 29, 2009, AGF learned that plaintiff asserted a consumer complaint against it with the BBB. (J.C.S.F. (ECF No. 86) ¶ 5.) Casteel, who served as director of compliance services for AGF, conducted an investigation with respect to plaintiff's account with AGF in order to respond to plaintiff's consumer complaint with the BBB. (Casteel Dep. (ECF No. 79-8) ¶ 7.)

Casteel's investigation revealed, and AGF'S adjusted transaction history for plaintiff indicates, that plaintiff did not make mortgage payments in June 2008, October 2008, January 2009, and June 2009. (Def. Ex. 1 (ECF No. 79-1) at 20-24; Def. Ex. 3 (ECF No. 79-4) at 16-17; Def. Ex. 5 (ECF No. 79-8) ¶¶ 11-15) AGF's account statements for plaintiff showed a past due amount of $1,053.10 in March 2009, a past due amount of $998.28 in May 2009, and a past due amount of $1,395.87 in June 2009. (Def. Ex. 5 (ECF No. 79-8) 6-8; J.C.S.F. (ECF No. 86) ¶ 3.)

AGF cashed the following checks and money order submitted to it by plaintiff:

1. A check dated July 3, 2008 in the amount of $450;
2. A check dated August 4, 2008 in the amount of $450;
3. A check dated September 8, 2008 in the amount of $400;
4. A check dated November 10, 2008 in the amount of $800;
5. A check dated December 30, 2008 in the amount of $480;
6. A check dated January 2, 2009 in the amount of $400;
7. A check dated April 9, 2009 in the amount of $350;
8. A money order dated May 18, 2009 in the amount of $500;
9. A check dated June 30, 2009 in the amount of $500; and
10. A check dated July 29, 2009 in the amount of $450.

(Pl. Ex. 5 (ECF No. 80-8) at 1-15.) The check dated January 2, 2009 does not provide the date plaintiff sent the check to AGF or when AGF received or cashed it. (Pl. Ex. 5 (ECF No. 80-7) at 10.) There is no entry on the adjusted transaction history for January 2009. (Def. Ex. 1 (ECF No. 79-1) at 24.) The adjusted transaction history indicates plaintiff made a payment with the effective date February 5, 2009 in the amount of $400. (Def. Ex. 1 (ECF No. 79-1) at 20-24.)

The cancelled check dated June 30, 2009 in the amount of $500 has a deposit date stamp of July 13, 2009 on it. (Pl. Ex. 5 (ECF No. 80-8) at 11.) There is no entry for June 2009 in the adjusted transaction history. (Def. Ex 1 (ECF No. 79-1) at 24.) There is an entry for July 2, 2009 in the amount of $500 in the adjusted transaction history. (Id.)

After investigating plaintiff's account history with AGF, Casteel wrote a wrote a two-page, single-spaced letter dated July 29, 2009 to Tom Bozikis ("Bozikis"), vice president of Bureau Operations at the BBB, in response to correspondence from Bozikis dated July 13, 2009 with respect to plaintiff's accusations of mistreatment. (Def. Ex. 3 (ECF No. 79-3) at 26-27; Casteel Dep. (ECF No. 79-8) ¶ 10.) The July 29, 2009 letter responded to plaintiff's accusations of mistreatment, and provided, in pertinent part:

> As of the beginning of June [2009], Ms. Wilson's account has been delinquent for several months.
>
> As of the date of this letter [July 29, 2009], her account is past due for April, May, June, and July payments.

(Def. Ex. 3 (ECF No. 79-3) at 26-27.)

After plaintiff filed her complaint with the BBB, she downloaded and read her file from the BBB website, which included Casteel's letter in response to her consumer complaint. (Pl. Dep. (ECF No. 79-3) at 22-24.) In a letter dated August 19, 2009, plaintiff wrote to AGF, enclosing a copy of a check made out to AGF dated April 9, 2009, a money order made out to

AGF dated May 18, 2009, a copy of a check made out to AGF dated June 30, 2009, and a copy

of a check made out to AGF dated July 29, 2009. (J.C.S.F. (ECF No. 86) ¶ 8; Def. Ex. 3 (ECF

No. 79-3) at 28-30; ECF No. 79-4 at 1-6.)

Prior to August 24, 2009, plaintiff retained Carol L. Rosen ("Rosen") as her counsel. (Pl.

Dep. (ECF No. 79-3) 30-31.) Rosen sent a letter dated August 24, 2009 to AGF on behalf of

plaintiff requesting "[a]n explanation of why Ms. Wilson's payments were considered past due

from April 2009 to August 2009." (Pl. Dep. (ECF No. 79-3) at 30-32; Def. Ex. 3 (ECF No. 79-

4.) In response to Rosen's letter, Jeffrey Ledbetter ("Ledbetter"), in-house counsel for AGF,

wrote a letter dated November 13, 2009, and provided Rosen a copy of plaintiff's adjusted

transaction history with AGF. (Def. Ex. 3 (ECF No. 79-4) at 11.) Ledbetter's letter provided:

"[AGF's] transaction records indicate that Ms. Wilson's account became four months past due in

April 2009. No payments were made on the account August 2008, January 2009, and March

2009, which caused her account to become progressively more delinquent." (Pl. Ex. 3 (ECF No.

79-4) at 11.)

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary
> Judgment.** A party may move for summary judgment, identifying
> each claim or defense – or the part of each claim or defense – on
> which summary judgment is sought. The court shall grant
> summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to
> judgment as a matter of law. The court should state on the record
> the reasons for granting or denying the motion.
> . . .
> **(c) Procedures.**
>
> **(1)** *Supporting Factual Positions.* A party asserting that a fact
> cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing Anderson, 477 U.S. at 248; Celotex Corp., 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); see Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999).   A court must not engage in credibility determinations at the summary judgment stage.   Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

When the nonmoving party bears the burden of proof at trial, the moving party may discharge its burden by pointing out "that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the moving party has made this showing, the burden then shifts to the nonmoving party, who cannot simply rest on the allegations in the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586. Summary judgment is proper in cases where the nonmoving party's evidence in opposition is "merely colorable" or "not significantly probative." Anderson, 477 U.S. at 249-50.

### C. Discussion

#### 1. General Framework – Defamation (Libel Per Se Claim)

Plaintiff is asserting that defendants' statements to the BBB constituted libel per se, which is a method of defamation. Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008) ("Defamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements.") In Tucker v. Fischbein, 237 F.3d 275 (3d Cir. 2001), the Court of Appeals for the Third Circuit recognized:

Under Pennsylvania law, a defamation plaintiff bears the burden to show:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

Tucker, 237 F.3d at 281 (citing 42 PA. CONS. STAT. § 8343(a)). "In Pennsylvania, a defamatory statement is one that 'tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Resnick v. Manfredy, 52 F. Supp.2d 462, 470 (E.D. Pa.1999) (quoting U.S. Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914, 922 (3d Cir. 1990)).

Pennsylvania has enacted statutory provisions governing actions for defamation. The applicable burdens of proof are codified at 42 PA. CONS. STAT. § 8343, which provides:

### § 8343. Burden of proof

**(a) Burden of plaintiff.--**In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

**(b) Burden of defendant.--**In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
(1) The truth of the defamatory communication.
(2) The privileged character of the occasion on which it was published.
(3) The character of the subject matter of defamatory comment as of public concern.

42 PA. CONS. STAT. § 8343(a), (b).

A written defamation is considered libel.  See Joseph, 959 A.2d at 334  ("A 'libel' is any malicious publication that is written, printed, or painted, or procured to be written, printed, or painted, and which tends to expose a person to contempt, ridicule, hatred, or degradation of character.") A publication imputing unworthiness of credit is libelous. Altoona Clay Prods., Inc. v. Dun & Bradstreet, Inc., 367 F.2d 625, 630-31 (3d Cir. 1966). Words recognized as injurious on their face are actionable per se. Joseph, 959 A.2d at 344 n.23. In discussing the plaintiff's burden to prove damages in the context of libel per se, the Pennsylvania Superior Court in Joseph instructed:

> With words that are actionable *per se,* only general damages, *i.e.,* proof that one's reputation was actually affected by defamation or that one suffered personal humiliation, or both, must be proven; special damages, *i.e.,* out-of-pocket expenses borne by the plaintiff due to the defamation, need not be proven. *Brinich v. Jencka,* 757 A.2d 388, 397 (Pa. Super. 2000). A plaintiff in a defamation action need not prove special damages or harm in order to recover; he may recover for any injury done to his reputation and for any other injury of which the libel is the legal cause. *Agriss,* 483 A.2d at 474. Pennsylvania has adopted the rule of Restatement (Second) of Torts, § 569 (1977), that all libels are actionable without proof of special harm. *Curran v. Philadelphia Newspapers, Inc.,* 376 Pa. Super. 508, 546 A.2d 639, 641 n. 3 (1988).

Joseph, 959 A.2d at 344.

Here, defendants argue they are entitled to summary judgment against plaintiff's claims of libel per se against them based upon the first two defenses set forth in section 8343(b): truth and conditional privilege.[1]

## 2.  **Truth as a defense**

With respect to truth as a defense, a defendant can meet his burden of proving the truth of the communication as long as he proves the statement to be substantially true. Chicarella v.

---

[1] As mentioned supra, defendants also argue that the evidence of record does not support an award of special or actual damages. In light of the court's discussion with respect to the affirmative defenses of truth and conditional privilege infra, defendants' argument with respect to damages is moot.

Passant, 494 A.2d 1109, 1115 n.5 (Pa. Super. Ct. 1985) (cited in Tucker v. Merck & Co., Inc., 102 Fed. App'x 247, 253 (3d Cir. June 29, 2004)). "'Pennsylvania has determined proof of substantial truth must go to the 'gist' or 'sting' of the alleged defamatory matter.'" Keeshan v. Home Depot, U.S.A., Inc., No. 00-529, 2001 WL 310601, at *15 (E.D. Pa. Mar. 27, 2001) (quoting Gilbert v. Bionetics Corp., No. 98-2668, 2000 WL 807015, at *3 (E.D. Pa. June 6, 2000)). "The test is 'whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" Dunlap v. Phila. Newspapers, Inc., 448 A.2d 6, 15 (Pa. Super. Ct. 1982) (quoting ROBERT D. SACK, LIBEL, SLANDER, AND RELATED PROBLEMS 50-51, 137-38 (1st ed. 1982)). Thus, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991) (quoting Heuer v. Kee, 59 P.2d 1063, 1064 (Cal. Dist. Ct. App. 1936)).

In the first amended complaint, plaintiff alleges that AGF willfully and knowingly fabricated an account delinquency and published false and defaming assertions to the BBB and Rosen in a deliberate attempt to defame plaintiff. (ECF No. 35, ¶ 14.) Defendants are entitled to summary judgment in this case, however, because "no reasonable juror could conclude that the Plaintiffs' evidence supports a finding that the communications were not substantially true." Pacitti v. Durr, 310 Fed. App'x 526, 528-29 (3d Cir. 2009).

### a.  Letter to the BBB

In Casteel's letter to the BBB, he wrote that plaintiff had "been delinquent for several months" and as of July 29, 2009, "her account [was] past due for April, May, June, and July." (Def. Ex. 3 (ECF No. 79-3) at 26-27.) Defendants argue they are entitled to summary judgment

13

against plaintiff's claim of libel per se based upon this letter because Casteel's statements were true or substantially true. (ECF No. 81 at 14-15.)

Plaintiff's adjusted transaction history with AGF shows that plaintiff did not make a payment to AGF in June 2008, October 2008, January 2009, March 2009, or June 2009. (Def. Ex. 1 (ECF No. 79-1) at 20-24.) Plaintiff made payments in April 2009, May 2009, July 2009, and August 2009 as evidenced by the checks she attached to the letter dated August 19, 2009 sent to AGF. (J.C.S.F. (ECF No. 86) ¶ 8; (Def. Ex. 3 (ECF No. 79-3) at 28-30; ECF No. 79-4 at 1-6.) Because of AGF's policy of applying payments toward late or delinquent payments, however, the payments made in April 2009, May 2009, July 2009, and August 2009 would have been applied to satisfy prior missed payments, including late fees, that had not been made in full. (See Casteel Aff. (ECF No. 79-8) ¶¶ 14-16.) As of July 29, 2009, the day Casteel wrote the letter to the BBB, plaintiff had not satisfied her obligation to make a payment for April 2009, May 2009, June 2009, or July 2009 because the payments made in those months were credited to satisfy plaintiff's prior missed payments. It follows that Casteel's representations that plaintiff's account had "been delinquent for several months" and as of July 29, 2009, "her account [was] past due for April, May, June, and July" were true. (Def. Ex. 3 (ECF No. 79-3) at 26-27.)

Plaintiff argues, however, that Casteel's statements were not true and points to alleged discrepancies in the adjusted transaction history as proof of their untruthfulness. (Id.) Plaintiff points to two cancelled checks, one dated January 2, 2009 in the amount of $400, and one dated June 30, 2009 in the amount of $500, to dispute the validity of AGF's adjusted transaction history. Plaintiff argues the adjusted transaction history incorrectly indicates she did not make payments in January or June 2009. (ECF No. 86 ¶ 12.) This evidence, however, is not sufficient

to show there is a genuine dispute of material fact with respect to the truth or falsity of Casteel's statements.

The copy of the check dated January 2, 2009 does not provide the date plaintiff sent the check to AGF or when AGF received or cashed it. (Pl. Ex. 5 (ECF No. 80-7) at 10.) The adjusted transaction history indicates plaintiff made a payment with the effective date February 5, 2009 in the amount of $400. (Def. Ex. 1 (ECF No. 79-1) at 20-24.) Plaintiff points to checks cashed by AGF as proof of payment. (Pl. Ex. 5 (ECF No. 80-8) 1-15.) There is no evidence of record, however, that plaintiff issued a check in February 2009, i.e., there is no check or money order in the record dated February 2009. The evidence of record indicates that plaintiff was given credit for the payment made via the January 2, 2009 check, and that the January 2, 2009 check was recorded on plaintiff's adjusted transaction history with the effective date February 5, 2009. Without evidence of the day the check was received or cashed, a reasonable jury could not find that Casteel's statement that plaintiff's account had "been delinquent for several months" or that as of July 29, 2009, "her account [was] past due for April, May, June, and July" was false simply because AGF credited plaintiff on February 5, 2009 for a payment made by check dated January 2, 2009. (Def. Ex. 3 (ECF No. 79-3) at 26-27.)

With respect to the check dated June 30, 2009 for $500, the cancelled check has a deposit date of July 13, 2009. (Pl. Ex. 5 (ECF No. 80-8) at 11.) There is no entry for June 2009 in the adjusted transaction history, but there is an entry for July 2, 2009 in the amount of $500. (Def. Ex 1 (ECF No. 79-1) at 24.) Plaintiff's check for July 2009 was dated July 29, 2009, and therefore, could not serve as the basis of the July 2, 2009 entry on the adjusted transaction history. (Pl. Ex. 5 (ECF No. 80-8) at 12.) The evidence of record indicates the June 30, 2009 check was accounted for in the adjusted transaction history in the entry dated July 2, 2009. A

reasonable jury could not find, therefore, that Casteel's statement that plaintiff's account had "been delinquent for several months" or that as of July 29, 2009, "her account [was] past due for April, May, June, and July" was false simply because AGF credited plaintiff on July 2, 2009 for a payment made with a check dated for June 30, 2009. (Def. Ex. 3 (ECF No. 79-3) at 26-27.)

Based upon the foregoing, defendants met their burden to show there is no genuine dispute of material fact with respect to the truth or substantial truth of Casteel's statements in his letter to the BBB. Summary judgment will, therefore, be granted in favor of defendants with respect to plaintiff's claim of libel per se based upon Casteel's letter to the BBB dated July 29, 2009.

### b.  Letter to Rosen

Rosen sent a letter on plaintiff's behalf to AGF dated August 24, 2009 with respect to AGF's position that plaintiff was past due on her mortgage from April 2009 to August 2009. (Pl. Dep. (ECF No. 79-3) at 30-32; Def. Ex. 3 (ECF No. 79-4). In response, on November 13, 2009, Ledbetter wrote to Rosen: "[AGF's] transaction records indicate that Ms. Wilson's account became four months past due in April 2009. No payments were made on the account August 2008, January 2009, and March 2009, which caused her account to become progressively more delinquent." (Pl. Ex. 3 (ECF No. 79-4) at 11.) As noted above, the adjusted transaction history indicates no payments were made in June 2008, October 2008, January 2009, March 2009, or June 2009. (Def. Ex. 1 (ECF No. 79-1) at 20-24.) The adjusted transaction history shows that plaintiff was credited for a payment of $450 on August 5, 2008. (Def. Ex 1 (ECF No. 79-1) at 24.) Ledbetter's statement that plaintiff did not make a payment in August 2008 was, therefore, incorrect. Ledbetter's conclusion that plaintiff's account was four months past due in April 2009 was accurate, however, because the adjusted transaction history shows plaintiff did not make

payments in four months – June 2008, October 2008, January 2009 and March 2009 – and the payments after those dates were insufficient to make up the prior missed payments and to become current on all payments due, including late fees. (Def. Ex. 1 (ECF No. 79-1) at 20-24.)

As stated above, in determining whether a defendant's statement is substantially true for the purpose of defending against a defamation claim, "[t]he test is 'whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced,'" Dunlap, 448 A.2d at 15 (quoting ROBERT D. SACK, LIBEL, SLANDER, AND RELATED PROBLEMS 50-51, 137-38 (1st ed. 1982), and thus, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" Masson, 501 U.S. at 517 (quoting Heuer, 59 P.2d at 1064). Despite Ledbetter informing Rosen that plaintiff did not make a payment in August 2008 as opposed to October 2008, Ledbetter's conclusion that plaintiff was four months delinquent was true. Providing Rosen with the correct month of a missed payment would not have had a different effect on her mind because the conclusion would have been the same, i.e., plaintiff was delinquent on her mortgage payments from April 2009 to August 2009. The court concludes that defendants met their burden to show there is no genuine dispute of material fact with respect to Ledbetter's letter to Rosen being substantially true, and plaintiff did not point to evidence sufficient for a reasonable jury to find otherwise. Ledbetter's minor inaccuracy with respect to the month of a missed payment (August rather than October) does not amount to a falsity which prevents the entry of summary judgment in favor of defendants in this case. Summary judgment will, therefore, be granted in favor of defendants with respect to plaintiff's claim of libel per se based upon Ledbetter's letter to Rosen dated August 24, 2009.

**3.  Privilege**

###### a.   General Framework

Defendants asserted an alternate defense of privilege. A defendant may defend a defamation action by showing that he made a statement pursuant to a privilege. 42 PA. CONS. STAT. § 8343(b)(2). "Communications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause are privileged.'" Thompson, 631 F.Supp.2d at 686 (quoting Moore v. Cobb-Nettleton, 889 A.2d 1262, 1268 (Pa. Super. Ct. 2005) (citing Miketic v. Baron, 675 A.2d 324, 329 (Pa. Super. Ct. 1996); RESTATEMENT (SECOND) OF TORTS § 595 (Protection of Interest of Recipient or a Third Person)). If a defendant carries its burden to show that a communication is conditionally privileged, the burden shifts to the plaintiff to establish that the defendant abused its conditional privilege. Miketic, 675 A.2d at 329.

Here, the applicable conditional privilege is one that arises from an occasion. The court concludes that if faced with the issues presented by defendants' motion for summary judgment and the procedural posture of this case, the Pennsylvania Supreme Court would apply section 593 of the Restatement (Second) of Torts. See e.g. Moore, 889 A.2d at 1268; Chicarella, 494 A.2d at 1112-13. Section 593 of the Restatement (Second) of Torts provides:

> One who publishes defamatory matter concerning another is not liable for the publication if
>
> > (a) the matter is published upon an occasion that makes it conditionally privileged and
> >
> > (b) the occasion is not abused.

RESTATEMENT (SECOND) OF TORTS § 593. In Chicarella, the court explained the circumstances in which a conditional privilege arising from an occasion applies:

> An occasion giving rise to a conditional privilege occurs when (1) some interest of the publisher of the defamatory matter is involved; (2) some interest of the

recipient of the matter, or a third party, is involved; or (3) a recognized interest of
the public is involved.

Chicarella, 494 A.2d at 1112-13. Pennsylvania state courts recognize a conditional privilege

arising from an occasion when some interest of the publisher or the recipient is involved as set

forth in sections 594 and 595 of the Restatement (Second) of Torts. See e.g. Am. Fut. Sys., Inc.

v. Better Bus. Bureau of E. Pa., 923 A.2d 389, 408 n.2 (Pa. 2007) (J. Baldwin, concurring) ("For

additional situations in which the conditional privilege may apply to elevate the level of fault, *see*

Restatement (Second) of Torts § 594 (Protection of the Publisher's Interest); § 595 (Protection of

Interest of Recipient or a Third Person)…."); Moore, 889 A.2d at 1268; Baker v. Lafayette Coll.,

504 A.2d 247, 272 (Pa. Super. Ct. 1986).

Section 594 of the Restatement (Second) of Torts describes a conditional privilege for the

protection of the publisher's interest:

> An occasion makes a publication conditionally privileged if the circumstances
> induce a correct or reasonable belief that
>
> (a)  there is information that affects a sufficiently important interest of the
>      publisher, and
>
> (b)  the recipient's knowledge of the defamatory matter will be of service in the
>      lawful protection of the interest.

RESTATEMENT (SECOND) OF TORTS § 594.

The Restatement (Second) of Torts § 595 describes a conditional privilege with respect to

the protection of the interests of a recipient or a third person:

> (1) An occasion makes a publication conditionally privileged if the circumstances
>     induce a correct or reasonable belief that
>
>     (a) there is information that affects a sufficiently important interest of the
>         recipient or a third person, and

     (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

(2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that

     (a) the publication is made in response to a request rather than volunteered by the publisher or

     (b) a family or other relationship exists between the parties.

RESTATEMENT (SECOND) OF TORTS § 595.

Once the defendant satisfies his or her burden to show that the conditional privilege applies to his or her communication, the burden shifts to the plaintiff to establish that the defendant abused the conditional privilege. Miketic, 675 A.2d at 329; see RESTATEMENT (SECOND) OF TORTS § 600.[2] As set forth by the Pennsylvania Supreme Court in American Future Systems, where the plaintiff is a private figure, a defendant abuses a conditional privilege if he or she negligently published the allegedly defamatory communication. Am. Fut. Sys, 923 A.2d at 400 ("[S]tates are free to allow a private-figure plaintiff to recover by establishing that the defendant acted negligently rather than maliciously....Indeed, we do find this to be the appropriate standard relative to a private-figure plaintiff for the reasons discussed above pertaining to the Pennsylvania Constitution's protections in the area of reputational interests, and in view of our understanding of the United States Supreme Court's present interpretation of the First Amendment."). The Court of Appeals for the Third Circuit has noted: "[U]nder current

_____

[2] Section 600 provides:

     Except as stated in § 602, one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he
          (a)    knows the matter to be false, or
          (b)    acts in reckless disregard as to its truth or falsity.
RESTATEMENT (SECOND) OF TORTS § 602.

Pennsylvania law, a showing of negligence is both required for a plaintiff to prove a defamation

claim and sufficient for a plaintiff to overcome the conditional privilege provided by state law."

Pacitti, 310 Fed. App'x at 528 (citing Am. Fut. Sys, 923 A.2d at 397). Based upon this rationale,

the court in Pacitti recognized:

> The Pennsylvania Supreme Court recently noted that, because a plaintiff can
> overcome state law conditional privileges simply by proving a defamation claim,
> the conditional privileges have "lost their significance" and become
> "superfluous."

Id. (quoting Am. Fut. Sys, 923 A.2d at 397, 398). Under the circumstances presented in this case,

i.e. a motion for summary judgment filed by the defendants based upon the affirmative defense

of conditional privilege, however, asserting the defense of conditional privilege is not

superfluous because plaintiff has not previously established that defendants were negligent in

publishing the allegedly defamatory statements. See Manning v. Flannery, No. 10-178, 2012 WL

2191741, at *3 n.3 (W.D. Pa. June 14, 2012).[3] The court will, therefore, determine whether

defendants met their burden to show a conditional privilege applies to their communications and,

---

[3] In Manning, the court considered a motion for reconsideration with respect to the court's entry
of summary judgment in favor of a defendant against the plaintiff's claim for defamation based
upon the defendant's assertion of the affirmative defenses of conditional privilege and truth.
Manning, 2012 WL 2191721, at *1. In holding defendant's assertion of a conditional privilege
was not superfluous in that case despite the court's holding in American Future Systems, the
court explained:

> Plaintiff cites those cases for the general proposition that a plaintiff can overcome
> state law conditional privileges just by proving a defamation claim. These cases
> are inapposite here where in opposing summary judgment, Plaintiff was not
> required to establish the prima facie elements of his defamation claims, nor did
> he. Thus, proof of negligence to show abuse of a conditional privilege was not
> superfluous where, as here, negligence in publishing the statement had not
> previously been established.

Manning, 2012 WL 2191741, at *3 n.3.

if so, whether plaintiff has met her burden of establishing defendants abused the conditional privilege.

Defendants argue they are entitled to summary judgment because the evidence of record shows that there is no genuine dispute of material fact with respect to Casteel's letter to the BBB and Ledbetter's letter to Rosen being conditionally privileged under either section 594 or 595 and that the privilege was not abused. (ECF No. 78 at 9-12.) Plaintiff argues the conditional privilege does not apply in this case because defendants' statements "were false and contain no facts; no facts of interest; no proper purpose; and no proper motive." (ECF No. 81 at 15.) The court will first address whether the letters are within the scope of a conditional privilege and next will address whether the privilege was abused.

### b.  Letter to the BBB

Casteel's letter to the BBB was published under circumstances that make it conditionally privileged under sections 594 and 595 of the Restatement (Second) of Torts. Under section 594(a), a publication is conditionally privileged if "there is information that affects a sufficiently important interest of the publisher" and "the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest." RESTATEMENT (SECOND) OF TORTS § 594. Here, the particularly important interest of the publisher was AGF's interest in its business reputation and its accreditation with the BBB. Comment h to section 594 provides:

> For the conditional privilege to arise under the rule stated in this Section, it is not necessary that the publisher's interest be actually in danger. It is enough that the circumstances are such as to lead a reasonable man to believe that the interest is in danger and that the defamatory publication is reasonably necessary for its protection.

Id. § 594 cmt. h. AGF was an accredited business and agreed to abide by BBB's Code. (ECF No. 79-8, ¶ 5.) Accreditation with the BBB is contingent upon a business affirming that "it meets and

will abide by [certain] standards," including to (1) build trust; (2) advertise honestly; (3) tell the truth; (4) be transparent; (5) honor promises; (6) be responsive; (7) safeguard privacy; and (8) embody integrity. (Def. Ex. 5 (ECF No. 79-8) 3-5.) Plaintiff filed a consumer complaint with the BBB accusing AGF of mistreating plaintiff in the way it was servicing her loan. If plaintiff's accusations were proven true, AGF's mistreatment of plaintiff may have served as a violation of BBB's Code and AGF may have lost its accreditation with the BBB. Under those circumstances, a reasonable jury could only find that a defendant in the position of AGF had a reasonable belief that its business reputation was in danger and Casteel's letter to the BBB was reasonably necessary for its protection.

Casteel's letter to the BBB also satisfies the second element of the conditional privilege under section 594 because the BBB's knowledge of the alleged defamatory matter, i.e., plaintiff was delinquent on her mortgage loan payments, served the BBB in the lawful protection of AGF's interest in protecting its business reputation and BBB accreditation. If AGF lost its accreditation with the BBB, its business reputation most likely would be harmed. As an organization issuing accreditation, BBB would have the power to strip AGF of its accreditation if it violated BBB's code. A person in the position of Casteel, therefore, would have a reasonable belief that it was necessary for Casteel to tell the BBB about the actions AGF took against plaintiff and its reasons for those actions, which included the alleged defamatory statement that plaintiff was delinquent on her mortgage payments, to prevent BBB from taking action against AGF. Under the foregoing analysis, Casteel's letter to the BBB was published under circumstances that make it conditionally privileged under section 594 of the Restatement (Second) of Torts.

Defendants are also entitled to assert a conditional privilege under section 595. First, a person in the position of Casteel may have a reasonable belief that the information contained in his letter to the BBB would "affect[] a sufficiently important interest of the [BBB]." RESTATEMENT (SECOND) OF TORTS § 595(1)(a). Here, the BBB had an important interest in "enhanc[ing] customer trust and confidence in business" by enforcing BBB's Code against the businesses it accredited. (Def. Ex. 5 (ECF No. 79-8) 3-5.) A person in the circumstances of Casteel may have a reasonable belief that interest would be harmed if the BBB failed to respond to and investigate plaintiff's complaint that she was mistreated by a BBB accredited business. Being sent information about AGF's position and reasoning with respect to its treatment of plaintiff would be necessary for BBB to protect its interest in enhancing customer trust and confidence in business. Under those circumstances, a person in the position of Casteel would have a reasonable belief that the information contained in the letter to the BBB affected a sufficiently important interest of the BBB.

Second, under section 595, the recipient of the alleged defamatory statement must be "a person to whom its publication is otherwise within the generally accepted standards of decent conduct." RESTATEMENT (SECOND) OF TORTS § 595(1)(a). An important consideration in determining whether the publication is within generally accepted standards of decent conduct is whether "the publication is made in response to a request rather than volunteered by the publisher." RESTATEMENT (SECOND) OF TORTS § 595(2)(a). Here, AGF was required to respond to consumer complaints under BBB's Code. Under the sixth principle of trust, AGF had a duty to respond to plaintiff's consumer complaint in order to "address[] all of the issues raised by the complainant" and "include[] appropriate evidence and documents supporting the business' position, and explains why any relief sought by the complainant cannot or should not be

granted." (Def. Ex. 5 (ECF No. 79-8) 3-5.) Plaintiff filed a consumer complaint with the BBB. AGF was informed about the complaint and was required to provide a response to the complaint under the sixth principle of BBB's Code. (Def. Ex. 5 (ECF No. 79-8) 3-5.) AGF responded via Casteel's letter dated July 29, 2009, which contained the alleged defamatory statements. Because the alleged defamatory statements were made in response to the BBB's correspondence with respect to plaintiff's consumer complaint, the court concludes publication of the alleged defamatory remarks to Bozikis, as vice president of the BBB, is within generally accepted standards of decent conduct.

Under either section 594 or 595 of the Restatement (Second) of Torts, a reasonable jury could only find that a conditional privilege arose in favor of defendants with respect to plaintiff's claim of libel per se based upon Casteel's letter to Bozikis.

### c. **Letter to Rosen**

Ledbetter's letter to the BBB was published under circumstances that make it conditionally privileged under sections 594 and 595 of the Restatement (Second) of Torts. Under section 594(a), a publication is conditionally privileged if "there is information that affects a sufficiently important interest of the publisher" and "the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest." RESTATEMENT (SECOND) OF TORTS § 594. At the time of Rosen's inquiry and Ledbetter's allegedly defamatory response, Rosen was serving as legal counsel to plaintiff. Rosen sent a letter dated August 24, 2009 to AGF on behalf of plaintiff requesting "[a]n explanation of why Ms. Wilson's payments were considered past due from April 2009 to August 2009." (Pl. Dep. (ECF No. 79-3) at 30-32; Def. Ex. 3 (ECF No. 79-4).) AGF has a sufficiently important interest in protecting its business against lawsuits. The alleged defamatory remarks contained in Ledbetter's letter to Rosen provided

Rosen the answer to her question and provided AGF's reasoning for why plaintiff was not current on her mortgage payments. Under those circumstances, a reasonable jury could only find that a person in Ledbetter's circumstances had a reasonable belief that providing that information to Rosen would protect AGF's interest in preventing legal action against the company.

Defendants are also entitled to assert a conditional privilege under section 595. First, a reasonable jury could only find that a person in the position of Ledbetter had a reasonable belief that the information contained in his letter to Rosen would affect Rosen's sufficiently important interest. RESTATEMENT (SECOND) OF TORTS § 595(1)(a). Here, Rosen's sufficiently important interest was the representation of her client. A person in the circumstances of Ledbetter would have a reasonable belief that interest would be harmed if Ledbetter failed to respond to her inquiry with respect to why plaintiff's payments were considered delinquent from April 2009 to August 2009. If defendants were not forthcoming with that information, Rosen may have been forced to take legal action on behalf of plaintiff in order to protect her client's interest. It was in the best interest of Rosen, as counsel for plaintiff, for Ledbetter to be forthcoming about AGF's reasoning for considering plaintiff's payment past due. Under those circumstances, a reasonable jury could only find that a person in the position of Ledbetter had a reasonable belief that the information contained in the letter to Rosen would affect her sufficiently important interest of representing plaintiff.

Second, under section 595, the recipient of the alleged defamatory statement must be "a person to whom its publication is otherwise within the generally accepted standards of decent conduct." Id. An important consideration in determining whether the publication is within generally accepted standards of decent conduct is whether "the publication is made in response to a request rather than volunteered by the publisher." Id. As stated above, Ledbetter's letter was

written in direct response to a request by Rosen, as opposed to being volunteered by AGF. Under those circumstances, a reasonable jury would have to find that the publication was made within the generally accepted standards of decent conduct. Under either section 594 or 595 of the Restatement (Second) of Torts a conditional privilege arose in favor of defendants with respect to plaintiff's claim of libel per se based upon Ledbetter's letter to Rosen.

### d.   Abuse of Conditional Privilege

Even if a conditional privilege arises, it is clear, under Pennsylvania law and pursuant to section 593 of the Restatement (Second) of Torts, the privilege cannot be abused. 42 PA. CONS. STAT. § 8343(a)(7); Am. Fut. Sys, 923 A.2d at 400; Miketic, 675 A.2d at 329; RESTATEMENT (SECOND) OF TORTS § 593. A publisher abuses the conditional privilege based upon an occasion if the plaintiff is a private figure and the publisher negligently publishes the defamatory statement. Am. Fut. Sys, 923 A.2d at 400. Plaintiff carries the burden to show that the conditional privilege asserted by defendants was abused, i.e., defendants were negligent. 42 PA. CONS. STAT. § 8343(a)(7); Am. Fut. Sys, 923 A.2d at 400. The evidence of record does not support a reasonable jury finding that Casteel or Ledbetter knew or should have known the information they published was not true. After receiving an inquiry from the BBB with respect to plaintiff's complaint, Casteel conducted an investigation into plaintiff's account history, and wrote a two-page, single-spaced letter to Bozikis, a vice president of the BBB, detailing his findings. With respect to Ledbetter, his letter indicates he consulted branch records and transaction records and learned about a conversation plaintiff had with a district manager about how to make her loan current. Under those circumstances and in light of the prior discussion in which the court determined that a reasonable jury would have to find the statements in issue were true or substantially true, the court must conclude that plaintiff failed to adduce sufficient facts

for a reasonable jury to find that either Casteel or Ledbetter abused an applicable conditional privilege. Defendants are, therefore, entitled to summary judgment against plaintiff's claims of libel per se based upon Casteel's letter to the BBB and Ledbetter's letter to Rosen.

### III.   *Plaintiff's Motion for Leave to File a Second Amended Complaint*

#### A. Additional Factual Allegations set forth in the Proposed Second Amended Complaint

In the proposed second amended complaint, plaintiff alleges a "Record of requests for your credit history" ("record of credit inquiries")[4] prepared by Experian, a credit reporting agency, supports an additional claim for libel per se against defendants.[5] (ECF No. 75-4 at 48.) According to plaintiff, in June 2009, defendants falsely reported a loan application to Experian. (ECF No. 75-1 ¶ 19.)

In the record of credit inquiries, Experian stated that certain credit inquiries would be "shared with others" and certain credit inquiries would be "shared only with [plaintiff]." (ECF No. 75-4 at 48.) The inquiries "shared with others" are inquiries resulting from "an action [plaintiff] took, such as applying for credit or financing or as a result of a collection." (Id.) The inquiries "shared only with [plaintiff]" are inquiries not initiated by an action plaintiff took. (Id.) Under the "[i]nquiries shared with others" column on plaintiff's record of credit inquiries, it indicates that on June 30, 2009, AGF reviewed plaintiff's credit report for a "permissible purpose." (ECF No. 75-4 at 48.) The record of credit inquiries provides that a permissible purpose could be for a person's "current creditor" to inquire about the person's credit history "to

---

[4] The record of credit inquires' report number is 334-6482-12. (ECF No. 75-4 at 48.)

[5] The record of credit inquiries provides that it was "Prepared for DARNELLA WILSON." (ECF No. 75-4 at 48.)

monitor [his or her] accounts" or to consider extending credit to that person. (Id.) According to plaintiff:

> The averred defaming report number (#334-6482-12) was instigated by Defendant AGF's false report to Experian that Ms. Wilson had recently applied for credit from AGF and they had denied credit. See Exhibits 6 [the record of credit inquiries] & 7 [the notice] attached. Such inquires [sic] are known in the financial services industry as a "hard inquiry" and are also known to have an automatic negative impact a person's credit rating.

(ECF No. 75-1 ¶ 20.)

Along with the record of credit inquiries, plaintiff references a second document in the proposed second amended complaint in support of her proposed claim of libel per se. The second document is entitled "Statement of Credit Denial, Termination, or Change Notice" (the "notice").[6] (ECF No. 75-4 at 50.) In plaintiff's deposition, which was submitted as an exhibit to defendants' motion for summary judgment and plaintiff's response to the motion for summary judgment, she testified that she received the notice from AGF. (Pl. Dep. (ECF No. 79-3) at 54-55.) The notice lists plaintiff's name and address in a section entitled "Applicant's Name and Address" and provides the following:

Description of Account, Transaction or Requested Credit:   <u>Foreclosure</u>

Description of Action Taken: <u>Credit is denied</u>

---

[6] In plaintiff's response to defendants' motion for summary judgment, she references AGF "falsely report[ing] a loan application to the Experian Credit Reporting Agency," and that AGF "communicated lies about her to Experian." (ECF No. 81 at 4, 7.) The record of credit inquiries and the notice were included as part of the record in support of defendants' motion for summary judgment. (ECF No. 79-5 at 14, 15.) As pointed out by defendants in their reply brief, at the time defendants filed their motion for summary judgment, there was no claim asserted in the first amended complaint against defendants based upon the record of credit inquiries or the notice. The court, therefore, considers plaintiff's proposed claim for libel per se based upon the record of credit inquiries and the notice for the first time in its discussion of plaintiff's motion for leave to file a second amended complaint.

(ECF No. 75-4 at 50.) The notice indicates that the reason for credit denial was plaintiff's "Temporary or Irregular Employment" and that the "credit decision was based in whole or in part on information obtained in a report from [Experian,] the consumer reporting agency…." (<u>Id.</u>) In the proposed second amended complaint, plaintiff alleges:

> Defendant AGF knowingly placed the Plaintiff's name and address in the section labeled "*Applicant's Name and Address*" thereby materially misrepresenting that Ms. Wilson had recently applied for credit from AGF. Furthermore, AGF knew that Ms. Wilson had not currently applied to them for credit when they represented "Credit is denied" in the section labeled "*Description Of Action Taken*" [sic]

> Plaintiff further avers that AGF knowingly made the material misrepresentation of the court action of foreclosure by placing the word "Foreclosure" in the "*Description of Account, Transaction, or Requested Credit*" section. Furthermore, AGF knew at the time they made the statement that no foreclosure against Ms. Wilson had occurred.

> AGF published the aforementioned misrepresentations to Experian Credit Reporting Agency for public appearance from June 30, 2009 to July 2011. As a result, Plaintiff has been injured per se by loss of credit worthiness, loss of reputation, and an inability to complete the restoration of her business facility in order to expand an existing business into the specialty food restaurant market.

(ECF No. 75-1 ¶¶ 21-23.)

**B. Standard of Review for a Motion for Leave to Amend**

The court may grant a plaintiff leave to amend a complaint under Federal Rule of Civil Procedure 15(a)(2), which provides: "The court should freely give leave when justice so requires." Rule 15, however, "does not permit amendment when it would be futile." <u>Kenny v. United States</u>, No. 10-4432, 2012 WL 2945683, at *4 (3d Cir. Jul. 19, 2012). Futility "'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" <u>Id.</u> (citing <u>Burch v. Millerg Factors, Inc.</u>, 662 F.3d 212, 231 (3d Cir. 2011)). In other words, "[t]he standard for deciding whether claims are futile for the purpose of granting leave to amend a complaint is the same as a motion to dismiss." <u>Markert v. PNC Financial Servs. Group, Inc.</u>,

828 F.Supp.2d 765, 771 (E.D. Pa. 2011). Thus, the court takes the factual allegations of the proposed amended complaint as true, draws all reasonable inferences in favor of the plaintiff, and denies the motion to amend if the factual allegations in the complaint do not raise plausible claims and are not sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. "[I]f the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied." See 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 2010).

## C.  Discussion

To satisfy the pleading standards set forth in Iqbal and Twombly, a plaintiff asserting a defamation (libel per se) claim under Pennsylvania law must plead factual allegations sufficient for the court to find it is plausible plaintiff may establish the following elements:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

Tucker, 237 F.3d at 281 (citing 42 PA. CONS. STAT. § 8343(a)). Plaintiff seeks to assert a claim of libel per se in the proposed second amended complaint based upon the record of credit inquiries prepared by Experian. This document indicates there are several reasons a credit inquiry could have been made including that plaintiff inquired about obtaining credit. Since it is possible that a credit inquiry could be made for that purpose, on its face, the record of credit inquiries would not reflect any defamatory import.

"In Pennsylvania, a defamatory statement is one that 'tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Resnick, 52 F. Supp.2d at 470 (quoting U.S. Healthcare, Inc., 898 F.2d at 922). "If the publication imputes insolvency, financial embarassment [sic], unworthiness of credit or failure in business of the plaintiff, it would be libelous." Sarkees v. Warner-West Corp., 37 A.2d 544, 546 (Pa. 1944) (cited by Altoona, 367 F.2d at 629). An inquiry with respect to a person's credit history, however, does not impute unworthiness of credit to that person; indeed, the credit inquiry may result in a report that places a plaintiff in a positive light.

In Ayvazian v. Moore Law Grp., No. 12-1506, 2012 WL 2574947, at *4-5 (C.D. Cal. July 3, 2012), the court considered whether a credit inquiry was defamatory and could be considered libel per se under California law. In that case, a defendant inquired about plaintiff's credit history. Id. The plaintiff contended the credit inquiry caused him "shame and embarrassment, loss of reputation, and severe emotional distress." Id. at *4. The court concluded plaintiff's contention that a credit inquiry constituted libel per se was "absurd" because there was nothing about the credit inquiry that "create[d] a 'presumption' of fiscal irresponsibility" as plaintiff contended and it did not expose plaintiff to "hatred, contempt, or ridicule." Id. (citing Cal. Civ. Code. § 45a.) Here, similar to Ayvazian, there is nothing in the record of credit inquiry

32

that imputes fiscal irresponsibility to plaintiff. It follows that that Experian's report indicating defendants inquired about plaintiff's credit history is not capable of a defamatory meaning because it does not "impute[] insolvency, financial embarrassment [sic], unworthiness of credit or failure in business" to plaintiff. Sarkees, 37 A.2d at 546. Plaintiff, therefore, failed to set forth a claim for defamation based upon the alleged defamatory report prepared by Experian.

It is noted there were no factual allegations that defendants published the record of credit inquiries; rather, it was prepared by Experian. Even assuming for the sake of argument there was a plausible defamatory statement, the factual allegations in the proposed second amended complaint are not sufficient for the court to conclude the claim is plausible because there are no allegations that the record of credit inquiries was published to third parties. The record of credit inquiries provides: "The inquiries in this [record] are shared with companies that view your credit history." (ECF No. 75-4 at 48.) Plaintiff did not plead that anyone else viewed her credit history reporting AGF's inquiry.

With respect to the notice, plaintiff does not allege it was published to a third party. As discussed above, she testified that she received that document from AGF. (Pl. Dep. (ECF No. 79-3) at 54-55.) The notice in and of itself cannot, therefore, support a claim for libel per se. The extent to which plaintiff relies upon the statements in the notice to support a claim of defamation against defendants with respect to the record of credit inquiries is unclear from the face of the proposed second amended complaint and the exhibits attached thereto. Plaintiff alleges that AGF published the misrepresentations contained in the notice to Experian for public view, but the record of credit inquiries does not contain the information in the notice. The record of credit inquiries contains only the innocuous statement that AGF inquired about plaintiff's credit history. Under those circumstances, and in light of the foregoing discussion, plaintiff did not set

forth a plausible claim for libel per se in the proposed second amended complaint. Plaintiff's motion for leave to file a second amended complaint will, therefore, be denied without prejudice. To the extent plaintiff has factual information with respect to AGF's communications to Experian that would support a plausible claim for libel per se, she may file a motion for reconsideration.

### IV. Conclusion

For the reasons set forth in this memorandum opinion, there is no genuine issue of material fact with respect to the truth or substantial truth of the statements claimed by plaintiff to be libelous per se and no reasonable jury could render a verdict in favor of plaintiff on her claim. In the alternative, there is no genuine issue of material fact with respect to the existence of a conditional privilege for those statements, and the plaintiff failed to adduce sufficient evidence from which a reasonable jury could find defendants abused the applicable conditional privileges. Defendants' motion for summary judgment (ECF No. 77) will, therefore, be GRANTED and an appropriate order will be entered.

With respect to plaintiff's motion for leave to file a second amended complaint, she failed to set forth factual allegations sufficient for the court to conclude that she could set forth a plausible claim for libel per se based upon the record of credit inquiries or the notice sent to her by AGF. Plaintiff's motion for leave to file a second amended complaint will, therefore, be DENIED without prejudice. The clerk shall mark this case closed. An appropriate order will be entered.

Dated: March 12, 2013                                   By the court,

                                                        /s/ Joy Flowers Conti
                                                        Joy Flowers Conti
                                                        United States District Judge